Wm. B. Nulty, Asst. U. S. Atty., of Portland, Me.

N. W. Thompson and Jacob H. Berman, both of Portland, Me., for respondent.

HALE, District Judge. This libel sets out that the Pilot, a crude oil boat, licensed for fisheries, has violated section 325, Title 46, of the Federal Code (46 USCA § 325), in that she has been employed as a carrier of cargo, and is therefore subject to forfeiture. The Pilot is of the registered length of 47.6 feet, 14 feet beam, a registered depth of 5.5 feet, built of wood, of 23.37 gross tons and 15 net tons; and at the time of the seizure was duly licensed for fisheries at the Port of Boston. She was seized July 24, 1929, by the Collector of Customs for the District of Maine, at a point near Portland, about a mile east from the lightship. She had on board a 32-volt lighting outfit, a Johnson outboard motor, radio receiving sets, one loud speaker, three batteries, one antennæ outfit, and two large glass insulators, and other small items, all weighing about three-quarters of a ton, and worth some $800. The government alleges that these articles constitute cargo and were on board the Pilot in violation of the license. It contends that having this merchandise aboard for the purpose of carrying it to Nova Scotia, it necessarily follows that the merchandise was cargo; and that the vessel was engaged in a cargo carrying business not permitted by the terms of her license.

It is urged on the part of the respondent that the merchandise aboard the boat should not be held to be cargo within the meaning of the statute; that the electric light outfit and the radio receiving sets, found aboard the boat, were ordinary appliances for a boat of this class; that the other items are of negligible importance; that their carriage was clearly not a commercial transaction nor made with any expectation of compensation; and that the whole testimony fails to show anything justifying a forfeiture of the boat. McLaughlin, the owner of the Pilot, testified that he had sold the boat for $2,000 to a party named Deveraux in Nova Scotia, to be delivered in Nova Scotia; but that he was to stop at Lubec, Me., on the way to Nova Scotia, to have a new electric light installed; that the agreement was that he was to go to Lubec when he had received word from the captain that the boat had arrived there; that while at Lubec he was to arrange the papers so that the vessel could proceed to Nova Scotia; that the Pilot left Gloucester with a captain and engineer who were paid so much

for the trip and paid their fare home by the train.

The burden is upon the government to show, by a preponderance of evidence, that the boat was violating the statute in question and was liable to seizure and forfeiture.

In U. S. v. Conejo, 10 F.(2d) 256, the United States District Court of Massachusetts held that a pleasure yacht is liable to seizure for transporting merchandise for pay, citing The Herreshoff (D. C.) 6 F.(2d) 414, in which case Judge Morton decreed the forfeiture of a yacht for breach of her license in transporting merchandise for pay. The Circuit Court of Appeals sustained the Conejo Case in 16 F.(2d) 264.

The courts have adopted a liberal view in deciding what, under the circumstances of each case, should be held to constitute cargo within the meaning of this class of statutes. In The Swallow, 1 Ware (21) 13, Fed. Cas. No. 13666, Judge Ware had before him a case in which the libel alleged that the boat in question was employed in another trade than that for which she was licensed and that she should be forfeited. Judge Ware tells the story of the Swallow's taking aboard certain sheep and carrying them from the Green Islands to Matinicus, while the vessel was on her way to the fishing grounds. In his opinion he says: "Can it in propriety of language be said that if a small fishing schooner, employed in the coast fisheries, while on her way to or from the fishing grounds, takes a few articles of provisions, or a few cattle, at one place and drops them at another, without being diverted from her course or occupation, and without any contract of hire or compensation, or expectation of compensation, except that of a reciprocation of the same offices of good neighborhood on another occasion,—can a vessel, under such circumstances, be said to be engaged in a trade within the meaning of the law? This would be extending the restrictions of the law further than any decision has yet carried them."

In The Willie G., 1 Hask. 253, Fed. Cas. No. 17762, Judge Fox, in the United States District Court for this district, cited Judge Ware's opinion and adopted the same liberal construction of a similar act.

In the instant case no evidence is before me tending to show that there was any commercial transaction or any pay involved. The boat was on a trip to Nova Scotia to be delivered to her purchaser. No contract, verbal or written, is in evidence. She was not diverted from her course. Clearly she was bound to Nova Scotia, and was stopping

at Lubec where an electric light plant was to be installed and where the owner was to arrange the papers so that the vessel could proceed to Nova Scotia. Upon a personal examination of the boat and her contents, I find that the articles aboard her occupied, and could occupy, only a small part of the vessel's hold.

The little testimony found in the record does not, in my opinion, sustain the allegations of the libel. It fails to convince me that the vessel was engaged in carrying cargo, within the meaning of the statute.

I commend the action of the learned counsel of the government in bringing the matter before the court, under all the circumstances of the case; but I think if I should decree the forfeiture of the vessel I should be extending the restrictions of the law further than the statute requires. I do not sustain the contention of the libelant that the boat was engaged in the carrying of cargo.

■ The second alleged cause of forfeiture is based upon section 4337 of the Revised Statutes (46 USCA § 278), which reads as follows: "If any vessel, enrolled or licensed, shall proceed on a foreign voyage, without first giving up her enrollment and license to the collector of the district comprehending the port from which she is about to proceed on such voyage, and being duly registered by such collector, every such vessel, together with her tackle, apparel, and furniture, and the merchandise so imported therein, shall be liable to seizure and forfeiture."

The government alleges that the Pilot, a vessel duly licensed for the fisheries, proceeded July 24, 1929, on a foreign voyage without giving up her license to the collector of customs of the district comprehending the port from which she was about to sail.

The undisputed facts in the case show that, while the boat was departing for a foreign voyage, the actual foreign part of the voyage was not to commence until the vessel left Lubec, Me., where there was to be a new electric light plant installed and where the owner was to arrange his papers so that the boat could proceed to Nova Scotia. I think that she should be given time at Lubec to surrender her license as called for by the statute. I cannot sustain the government in its contention.

■ The third cause of forfeiture is based on section 4197 of the Revised Statutes (46 USCA § 91), which provides that no vessel shall sail from its port to a foreign port, with exports on board, without filing a manifest. I think the government has not met the burden of showing that the vessel was sailing to a foreign port with exports on board. The boat was seized before she arrived at Lubec, where, according to the testimony, her owner was to meet her and have time to attend to certain details. It does not follow from the testimony that she would have proceeded to the foreign port with any exports on board.

■ The fourth cause of forfeiture is brought under section 584 of the Tariff Act of 1922 (19 USCA § 486). That statute provides, in substance, that a cargo-carrying vessel should have a manifest which should be produced upon demand of the boarding officer; and that, if no manifest is produced, then the master is liable for a penalty of $500, for which the vessel may be held.

The government, as I have already found, has not shown the Pilot to have been a cargo-carrying vessel within the meaning of the law.

A decree may be drawn dismissing the libel and ordering a restoration of the vessel to her owner.